```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF PUERTO RICO


UNITED STATES OF AMERICA         *        Appeal No. 18-2104
                                 *
versus                           *        No. 16-00097 (PG)
                                 *
RAYMOND SANTANA-AVILES (2)       *        October 22, 2018
* * * * * * * * * * * * * * * * *


              REVOCATION OF SUPERVISED RELEASE HEARING
              BEFORE THE HONORABLE JUAN M. PEREZ-GIMENEZ
                     UNITED STATES DISTRICT JUDGE
```

Appearances:

| | |
|---|---|
| For the Government: | A.U.S.A. Daynelle M. Alvarez-Lora<br>United States Attorneys Office<br>350 Chardon Avenue<br>Torre Chardon, Suite 1201<br>San Juan, Puerto Rico 00918<br>(787) 282-1817 |
| For the Defendant: | A.F.P.D. Francisco E. Celedonio<br>Federal Public Defenders Office<br>241 Franklin D. Roosevelt Ave.<br>Hato Rey, Puerto Rico 00918-2441<br>(787) 281-4922 |
| Official Court Reporter: | Donna A. Goree, CSR, RPR, CRR<br>150 Carlos Chardon Ave. Room 150<br>San Juan, Puerto Rico  00918<br>(979) 533-0422 |

Proceedings recorded by mechanical stenography using computer-aided transcription software.

*** **REVOCATION OF SUPERVISED RELEASE HEARING** ***

**(October 22, 2018)**

**THE DEPUTY CLERK:** Criminal case 16-97, United States of America versus Raymond Santana-Aviles. Case called for revocation of supervised release. On behalf of the government, Assistant U.S. Attorney Daynelle Alvarez. On behalf of the defendant, the Assistant Public Defender Francisco Celedonio. The defendant is present, and he will be assisted by the official court interpreter.

**AUSA ALVAREZ:** Good morning. The government is ready to proceed.

**AFPD CELEDONIO:** Good morning, Your Honor. The defense is ready to proceed. May we approach briefly, Your Honor?

**THE COURT:** Pardon me?

**AFPD CELEDONIO:** May we approach, Your Honor?

**THE COURT:** Yes.

(The following proceedings were held at the bench.)

**AFPD CELEDONIO:** Judge, I have a request which is -- I've looked at my client's history, the old PSR. Initially he was sentenced to nine months by Your Honor. I'm aware and he's aware of the drug history and the problems that he's had with drugs.

My request, Your Honor, is that rather than proceed today -- we are not contesting the violations that are

```
11:01   1   alleged in the notification to the Court; but I believe, Your
11:01   2   Honor, that -- this is a 21-year-old kid.  He needs drug
11:01   3   treatment.  I think that the Court will be in a better position
11:01   4   to evaluate how much and if jail is more appropriate if he's
11:01   5   placed in a drug treatment and then this violation hearing is
11:01   6   hanging over his head in a way.  So, for example, Your Honor,
11:01   7   what I'm proposing is that we continue this hearing.
11:01   8           THE COURT:  Any proposal to that is -- he has a very
11:01   9   nonchalant attitude towards the Court.  He was summoned twice,
11:01  10   and he didn't show up.  He was summoned again.  He showed up,
11:01  11   but he didn't want to give his sample for a drug testing.  He
11:02  12   was positive on July 19th.  On August the 9th there was a home
11:02  13   visit by the probation officer, and at that time the probation
11:02  14   officer was unable to collect any urine specimen.
11:02  15           AFPD CELEDONIO:  We can see that, Your Honor.
11:02  16           THE COURT:  I know you can see it.  Due to lack of
11:02  17   desire.  As I mentioned before, he failed to report twice, as
11:02  18   summoned by the probation officer.  And he mentioned to the
11:02  19   marshal service in an interview that he could be anywhere, he
11:02  20   could be wherever he wanted to.  You know?
11:02  21           AFPD CELEDONIO:  If I may, Your Honor, just if I may
11:02  22   expand on my request, his -- the nonchalant attitude --
11:02  23           THE COURT:  Why do we have to approach the bench for
11:02  24   that?  Put it on record.
11:02  25           AFPD CELEDONIO:  Very well, Your Honor.
```

(End of bench conference.)

**AFPD CELEDONIO:** Yes, thank you, Your Honor. Your Honor, as the Court is aware that the Brahman's principle issue here is the drug abuse history. As the Court knows, based on his -- we are not contesting the violations as alleged. What I'm trying to bring to the Court's attention, Your Honor, is that we're talking about a 21-year-old defendant with a clearly -- a long-term -- even though he's only 21, he's been under the -- he's been using controlled substances since he was 14. That's documented in the PSR from the previous sentence at Paragraph 44, and that continues to be the concern that has brought him before the Court and that has infected his relationship with probation. It's the usage of narcotics, starting at age 14. We're talking about a combination of marijuana, Percocet, Tramadol.

He has tested positive. We do not dispute that, Your Honor; but the attitude that I think probation refers to or identifies has to do precisely with that, with the fact that he has drug abuse concerns and the fact that he's a 21-year-old.

Previously, Your Honor sentenced him on the underlying offense to nine months. The guidelines in this case are three to nine months. I have taken the opportunity, since the initial preliminary hearing, of meeting with him on various occasions. Your Honor, he very much is aware of the drug

problem. He very much is aware that he has to overcome that.

The specification at Page 2 mentions that he was approaching a, quote, "known drug spot." That location happens to be the home of Jose Luis Aviles, who is his uncle. So he was actually on the way to the residence of a family member. He wasn't on the way toward a narcotics trafficking location. Even though the authorities may consider it that, in his mind, Your Honor, he is going to visit family; and that's why he interacted with the marshals in the way that he did.

I suggested to the Court -- I am suggesting to the Court that the better way perhaps is to address the drug abuse problem. He was at Guara Bi. Even though he tested positive while he was at the program, he successfully completed the program on July 16th of this year.

The Court can -- certainly has the option of going forward today and imposing a sentence. The Court also has that option even after he completes a drug treatment, in-patient drug treatment program; and that is what I'm suggesting, Your Honor, that after giving him the opportunity to do an in-patient program -- and it will be the second time, admittedly -- but at that point, Your Honor, I think that that will address the attitudinal concerns.

Whether the attitude towards probation is nonchalant or not, after a stent at a drug treatment program, I think the Court can better gauge whether or not he is

responsive; and to the extent that he is responsive and to the extent that he successfully completes the program, I think the Court can then be in a better position to impose a sentence.

So I'm asking the Court to consider that, to consider continuing this hearing, but not to let him out of the community, but to have him placed in a drug treatment program as an alternative to simply putting him in jail for either a period from three to nine months, which is the guideline range, because I think that accomplishes very little. Putting him in jail for three or four or five months accomplishes warehousing him.

He's not going to be able to get a drug program in jail in that short period of time. So when he was released, we still have the same underlying concerns about drug usage and the dependency; whereas, Your Honor, in my suggestion, it allows him to at least begin that process, which he has to complete eventually, the process of overcoming the addiction. And, thereafter, the Court can again impose whatever sentence the Court deems appropriate.

It's possible that if he is successful, if he completes the program, if he changes the attitude that has been identified, that then the Court may have a better idea of what is an appropriate sentence, given the fact that he is maturing. He's 21 years old, Judge. I mean the notion that he wants to -- that he was not compliant with the marshals when he was

confronted, those are the actions of a 21-year-old kid who's been using narcotics, Judge. It doesn't mean that he is an inherently bad kid. It means that he's 21, that his brain is still underdeveloped, that he's under the influence of narcotics. And I'm asking the Court to consider that as a mitigating factor.

And again, after he completes a program -- well, certainly, if he fails, then the Court can bring down the hammer. But if he doesn't fail, if he actually is successful and he begins to change his attitude and his perspective, then I think the Court will have a more enlightened person before it and can impose an appropriate sentence, Your Honor.

**THE COURT:** Thank you. Anything from the government?

**AUSA ALVAREZ:** Yes, Your Honor. The government is requesting that his supervised release term be revoked and that he be sentenced to nine months, which is the higher end. The government understands that this individual has had the chance before, Your Honor. He already participated in in-patient treatment. He participated in out-patient treatment. His probation officer has been trying to assist him in any way that he needs, and he has had an attitude of non-compliance and of disrespect to the probation officer.

And even when encountered by the marshals, he did not -- he did not notify the probation officer of this event. And, furthermore, when the marshals spoke to him about

it, as has been mentioned here before, his response was, in other words, that he could be wherever he wanted to be at any time or something of that sort.

So we're also referring Your Honor to the last final revocation hearing, which was held before Honorable Judge Gelpi -- yes, Gelpi, at April 9, 2018, where he was given another chance, Your Honor; and specifically on the second page of that order mentions that failure to comply will result that the defendant be revoked and be incarcerated, according to the guidelines. So he knew. He has known that if he didn't comply, this is what was coming. So, this is the time, Your Honor; and that's the government's request.

**AFPD CELEDONIO:** If I may very briefly, Your Honor? Extremely briefly, just to bring to the Court's attention, the government is requesting nine months. On the underlying weapons case, the 922(k) violation that Your Honor sentenced him to in 2016, he received a nine-month sentence. In terms of the equities, Your Honor, a nine-month sentence for failing to comply with drug treatment and being, quote, "noncompliant and disrespectful" is just completely onerous, nine months for, quote, "being disrespectful."

In the world of drug treatment, relapse is part of the recovery process. Nobody gets out of jail, has a drug problem, and has a smooth path immediately to overcome it. Inherent in the concept that an individual is going to overcome

his addiction is the notion that he's going to have missteps, that he is going to fall back.

And again, Your Honor, I reiterate: We're talking about a 21-year-old kid. It is simply not necessary to impose a nine-month sentence. To the extent the Court imposes a lesser sentence, I'm requesting a drug program. I'm requesting a three-month sentence. To the extent it's not enough, he will continue to be on supervision, so the Court will always have the opportunity of putting him back in jail for a longer period of time; and I'm asking the Court to consider those points, Your Honor.

Nine months for, quote, "being disrespectful" is just not equitable in the context of the underlying sentence for the possession of a weapon. He's not been convicted of a crime. He wasn't selling drugs. He wasn't in possession of a weapon. He wasn't in the presence of narcotics or any weapons. He's essentially failing to heed to drug treatment because he's addicted, and he's going to visit family which happens to be a family or a location that's been identified as a --

**THE COURT:** I thought you were going to be short.

**AFPD CELEDONIO:** I was, Your Honor. I'm about to finish, Your Honor. So I'm asking the Court to consider the equities in what's an appropriate sentence. Thank you, Judge.

**THE COURT:** Thank you. Mr. Santana, do you care to state anything? You don't have to, but you may do so.

**THE DEFENDANT:** I recognize that I am wrong. It is human to recognize one's mistakes. That's why I am asking for an opportunity to recover all that I have lost and to start putting my life together again.

**THE COURT:** Anything else from the government?

**AUSA ALVAREZ:** Nothing further, Your Honor.

**THE COURT:** All right. After having heard both parties in this case, the Court finds that Mr. Santana-Aviles has violated the conditions of the supervised release term by not reporting to the U.S. probation officer; not following her instructions; and using controlled substances, as cited in the motion filed on September the 12th, 2018, at Docket 109. Therefore, the supervised release term imposed is hereby revoked.

To impose a sentence, the Court will consider Chapter 7 policy statements of the sentencing guidelines regarding revocation of supervised release. Pursuant to guideline 7D1.1A1, a Grade C violation has been determined; and this involves a violation of a condition of supervision. He's in a criminal-history category of one and a Grade C violation. The guideline imprisonment range in this case is from three to nine months, pursuant to Guideline 7B1.4A1.

Pursuant to Title 18, United States Code, Section 3583(e)(3), however, upon revocation of supervised release, the Court may impose a sentence of imprisonment of not

more than three years, since the original offense was a Class D felony.

The Court is aware that on January 17th, 2018, a motion at Docket 95 was filed by the U.S. probation officer notifying violations of conditions of release and requesting a judicial reprimand. On January 19th, 2018, the Court issued an arrest warrant at Docket 97. Notwithstanding, at the revocation hearing held on April, 2018, the Court granted Mr. Santana be given an opportunity. His supervised release was not revoked, but rather modified to include intensive in-patient substance abuse treatment for a period of 90 days, to be followed by out-patient treatment. Thus this is the second revocation hearing proceeding that Mr. Santana-Aviles is facing within the past six months. Docket 109 reflects that two months after the revocation hearing, the supervisee started incurring a violation of his terms of supervised release.

The Court has reviewed the offender's personal history, his continued struggles to comply with the law and conditions of release, as well as the nature and repetitive breaches of trust. We have from the motion filed by the probation officer on September the 12th of 2018, that even while he was receiving the in-patient treatment at Guara Bi, he gave a positive for the use of buprenorphine, which is a controlled substance -- well so that during his in-patient treatment he also was able to make use of drugs.

			Once he was released for out-patient treatment on July 16th from the intensive in-patient treatment program, on July 19th, three days later, a home visit was completed. A drug test was collected. The same was positive for the use of opiates. At first Mr. Santana-Aviles denied the use; but later he admitted to taking Percocet pills. Once again, he was verbally reprimanded and counseled about his reckless behavior.

			On August 9th, during a home visit, a drug test was unable to be collected due to his lack of desire. One day later, August the 10th and on August 16th, he failed to report to the office for a drug test as part of his treatment program. He also failed to call the probation officer on August 13th. Mr. Santana-Aviles, at the time of the filing of this motion, he was receiving treatment. He had been verbally reprimanded. Yet he continues to fail to comply with the supervised release conditions. Furthermore, the marshals reported to the probation officer that on August 29th, 2018, they saw him enter a home, which counsel has stated is his uncle's. But when he was questioned by the marshals service, allegedly he expressed to them that he could be wherever he wanted.

			After reviewing the offender's present history, his continuing struggles to comply with the law and the conditions of release, as well as the nature and repetitive breaches of trust, the judgment of this Court is that Mr. Santana-Aviles is to be sentenced at the maximum statutory

```
11:19   1    sentence, pursuant to Title 18, United States Code,
11:19   2    Section 3583(e)(3); that is two years of imprisonment, under
11:19   3    the custody of the U.S. Bureau of Prisons.  Upon release of
11:19   4    confinement, he is to be placed on supervised release for 12
11:19   5    months, with the standard and special conditions previously
11:19   6    imposed in the original sentence with the case and also with
11:19   7    the following conditions:
11:19   8               He shall remain under home detention with an
11:19   9    electronic monitoring at his residence of record for a period
11:19  10    of six months, to commence upon his release from imprisonment.
11:19  11    In this time he shall remain at his residence at all times
11:20  12    except for employment, education, substance abuse treatment
11:20  13    program, mental health treatment, or any Court ordered
11:20  14    obligation approved in advance by the probation officer.
11:20  15               That is the finding of the Court.  I have to
11:20  16    advise you, Mr. Santana-Aviles, that you can appeal these
11:20  17    findings if you feel they are contrary to law or if they were
11:20  18    unlawfully applied in your case.  Any notice of appeal must be
11:20  19    filed within 14 days of the judgment being entered; and if you
11:20  20    are unable to pay for the cost of the appeal, you may apply for
11:20  21    leave to appeal in forma pauperis.  At this time you will
11:20  22    continue to be represented by the public defender, if and
11:20  23    whenever substitute counsel is appointed.  That is the judgment
11:21  24    of the Court.
11:21  25               **AFPD CELEDONIO:**  Your Honor, the circuit requires me
```

| | |
|---|---|
| 11:21 | 1   to notify the Court that we object to the sentence as |
| 11:21 | 2   substantively and procedurally unreasonable.  The Court's |
| 11:21 | 3   departure of variance upward from a three to nine month |
| 11:21 | 4   guideline to two years is excessive; and we object to the |
| 11:21 | 5   Court's sentence, Your Honor. |
| 11:21 | 6                   **THE COURT:**  Thank you.  But there was not a |
| 11:21 | 7   departure.  The Court just referred to the sentencing -- |
| 11:21 | 8   referred to the law, not to the guidelines.  I did not perform |
| 11:21 | 9   any departures in this case. |
| 11:21 | 10                  **AFPD CELEDONIO:**  I recognize that, Your Honor; but |
| 11:21 | 11  the sentence is a variance from a three to nine month |
| 11:21 | 12  recommended by the guidelines. |
| 11:21 | 13                  **THE COURT:**  It's not a variance either because it's |
| 11:21 | 14  not an issue of the sentencing guidelines.  It's just strict |
| 11:21 | 15  application of the law.  That is not a variance.  Thank you. |
| 11:21 | 16  You may withdraw. |
| 11:21 | 17                  **AFPD CELEDONIO:**  Thank you, Your Honor. |
| 11:21 | 18                  **AUSA ALVAREZ:**  Good day, Your Honor. |
| 11:21 | 19                  **THE COURT:**  Good day. |
| 11:22 | 20                       *(Matter adjourned.)* |
| | 21 |
| | 22 |
| | 23 |
| | 24 |
| | 25 |

# CERTIFICATE

I, Donna A. Goree, CSR, RPR, CRR, Official Court Reporter for the United States District Court, District of Puerto Rico, certify that the foregoing is a true and correct transcript, to the best of my ability and understanding, from the record of proceedings in the above-entitled matter.

*s/ Donna A. Goree*
Donna A. Goree, CSR, RPR, CRR
Official Court Reporter